IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| THERESA L. DUNE, | ) | C/A 0:13-1676-JFA-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| G4S REGULATED SECURITY SOLUTIONS, | ) | |
| INC., AND G4S SECURE SOLUTIONS (USA) | ) | |
| INC. f/k/a THE WACKENHUT CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff, a former employee of the Defendants (collectively referred to as "G4S"), asserting claims for gender discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. (First Cause of Action); pregnancy discrimination in violation of the Pregnancy Discrimination Act (Second Cause of Action); violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601m et seq. ("FMLA")(Third Cause of Action); and breach of contract (Fourth Cause of Action).

G4S filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on June 16, 2014. Plaintiff filed a memorandum in opposition to the Defendant's motion on July 10, 2014, to which G4S filed a reply memorandum on July 28, 2014. G4S' motion is now before the Court for

1



disposition.[1]

## **Background and Evidence**[2]

G4S has a contract with South Carolina Electric and Gas (SCE&G) to provide security services at the Virgil C. Summer Nuclear Station located in Jenkinsville, South Carolina. <u>Workman Affidavit</u>, ¶ 2. Plaintiff applied for employment with G4S on June 10, 2006. <u>See</u> <u>Plaintiff's Deposition</u>, p. 54; Exhibit 3. Plaintiff received a conditional offer of employment from G4S, and after successfully completing all of the requirements set forth in the conditional offer, she began to work as a nuclear security officer at G4S on July 17, 2006. <u>See</u> <u>Plaintiff's Deposition</u>, pp. 62, 64-65, Exhibit 6. As a nuclear officer, Plaintiff was responsible for conducting patrols, escorts, vehicle searches, closed circuit television monitoring and barrier patrols. <u>See</u> <u>Plaintiff's Deposition</u>, p. 106.

In early 2011, Chuck Workman became Plaintiff's supervisor. <u>See</u> <u>Workman Affidavit</u>, ¶ 2. Plaintiff testified that in April 2011, she attended a lunch with Workman and several of her co-workers, including Melissa Walker Hall and Willie Perry. <u>See</u> <u>Plaintiff's Deposition</u>, pp. 148-149. During that lunch, Plaintiff told Workman that she and her husband were planning to have another child. <u>See</u> <u>Plaintiff's Deposition</u>, pp. 14, 148. Plaintiff testified that Workman replied, "[o]h God, please wait until after the Outage because we cannot afford to lose any officers." <u>See</u> <u>Plaintiff's</u>

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. G4S has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. <u>Pittman v. Nelms</u>, 87 F.3d 116, 118 (4th Cir. 1996).



Deposition, pp. 148-149; Plaintiff's Deposition Exhibits 42 and 46.[3]

On or about May 28, 2011, Plaintiff pulled a calf muscle while on fire watch duty. See Plaintiff's Deposition, pp. 141-142; Plaintiff's Deposition Exhibit 36. As a result of this injury, Plaintiff was required to work a light duty assignment in the G4S office for approximately two (2) weeks. See Plaintiff's Deposition, pp. 143-144. On June 9, 2011, Plaintiff was evaluated by the physician on site at the Summer Nuclear Facility and was released to return to full duty. See Plaintiff's Deposition, p. 143 & Exhibit 37. That same day, Plaintiff told Workman that "I'm pretty sure I'm pregnant," and that she would need to get papers to be on light duty because she would not be able to carry a weapons belt or long gun while she was pregnant. Plaintiff testified that Workman told her that G4S did not have light duty jobs. See Plaintiff's Deposition, p. 145. Plaintiff testified that she also asked for FMLA paperwork from Workman, but that he told her she would not need it. When Plaintiff asked him what he meant, he said that she would have to get the paperwork from Brenda, his administrative assistant, and that she wasn't there. Plaintiff never had another discussion with Workman about this issue. See Plaintiff's Deposition, pp. 145, 152-153; Exhibit 42 [Court Docket No. 27-4, p. 147].

The evidence further reflects that, also on June 9, 2011, when Workman arrived at work he had found a folder on his desk which had been left by Jeff Bedenbaugh, Plaintiff's direct supervisor at the time. The folder contained a photograph of Plaintiff in which she was displaying her duty weapon in a shooting position, which was a violation of policy. Workman Affidavit, ¶ 5 &

---

[3]An Outage is the time period during which the Summer Nuclear Facility is shut down for regular maintenance. Since numerous maintenance and construction workers come into the facility during the Outage, security officers are required to work longer hours than normal. See Workman Affidavit, ¶ 18.



Exhibit A; Plaintiff's Deposition Exhibit F.  After trying unsuccessfully to contact Bedenbaugh on June 9 and June 10 to discuss the photograph, Workman met with Bedenbaugh regarding the photograph on Monday, June 13.  Bedenbaugh told Workman that he had found the photograph of Plaintiff while surfing the internet.  Bedenbaugh said that he had showed the photograph to his supervisor, Lieutenant Williamson, who instructed him to give it to Workman.  Bedenbaugh confirmed that the individual in the photograph was Plaintiff and was also able to identify that the photograph was taken at one of the duty stations in Summer Nuclear Facility.  See Workman Affidavit, ¶ 10 & Exhibits F - I.

When Plaintiff arrived at work on the 13th, she was called into a meeting with Workman and Captain Kate Bassett, who was a member of G4S' management team at the G4S Summer Nuclear Facility.  See Plaintiff's Deposition, pp. 160-161; See Workman Affidavit, ¶ 11 & Exhibits G.  Workman asked Plaintiff whether she had ever taken her duty weapon out of its holster while on shift, whether she had ever drawn her weapon in a defensive position, and whether anyone had ever taken a picture of her while in a duty position.  Plaintiff answered no to each question.  Workman then affirmed that Plaintiff was aware of the policies at the Summer Nuclear Facility regarding use of cameras, and Plaintiff also confirmed at her deposition that it was a violation of policy to have her gun drawn.  See Workman Affidavit, ¶ 11 & Exhibit G; Plaintiff's Deposition, p. 160.  Workman then showed Plaintiff the photograph at issue, and offered her the opportunity to provide a written statement regarding the incident.  See Plaintiff's Deposition, p. 160; see also Workman Affidavit, ¶ 11 & Exhibit G.  Plaintiff wrote a statement in which she apologized for the picture being on the internet, said that it was taken when she first started work for G4S, that she didn't remember posting the picture, that she would have taken it off of the internet if she had



4

realized that it was on there, and that she had not used her myspace account in many years.  See Plaintiff's Deposition Exhibit 39; See Workman Affidavit, Exhibit J.  After taking Plaintiff's statement, Workman informed Plaintiff that she was being placed on suspension while G4S investigated the incident.  See Plaintiff's Deposition, 161; See Workman Affidavit, ¶ 11 & Exhibit G.

Workman attests that after he reviewed the evidence and policies, met with witnesses and took statements, he prepared an Employee Termination Review package on or about June 15, 2011.  See Workman Affidavit, ¶ 12 & Exhibit K.  Workman concluded that Plaintiff should be terminated because her conduct violated numerous policies in place at the Summer Nuclear Station, and because of her extensive prior disciplinary history.  See Workman Affidavit, ¶ 12 & Exhibit K.  Workman's recommendation to terminate Plaintiff was approved by management at G4S, as required by policy.  See Workman Affidavit, ¶ 13 & Exhibit F, p. 10.

After receiving approval to terminate Plaintiff's employment, Workman sent Plaintiff a termination letter on June 21, 2011.  See Plaintiff's Deposition Exhibit 40; See Workman Affidavit, ¶ 17 & Exhibit L.

## **Discussion**

G4S seeks summary judgment on all of Plaintiff's claims.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, to survive summary judgment the opposing party must respond to the



motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

## I.

### (First Cause of Action)

In her First Cause of Action, Plaintiff asserts that she was subjected to disparate treatment and unlawful retaliation on the basis of her sex,[4] and was subjected to a hostile work environment, when she was terminated by G4S.  See Complaint, ¶¶ 29-37.[5]  G4S asserts that Plaintiff's sex discrimination disparate treatment claim, sexual harassment (hostile work environment) claim, and retaliation claim are all subject to dismissal because she did not exhaust her administrative remedies with respect to any such claims prior to filing this lawsuit.

In order to bring a lawsuit in United States District Court under Title VII, a plaintiff is first required to properly exhaust his or her administrative remedies.  Specifically, a claimant is required to file a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state",

---

[4]While Plaintiff also references in her First Cause of Action that she was discriminated against based on her pregnancy; see Complaint, pp. 4-5; since she has asserted a separate cause of action based on discrimination due to pregnancy in her Second Cause of Action, the undersigned has discussed any discrimination allegedly due to her pregnancy under Title VII in the discussion of her Second Cause of Action.  See discussion, infra. See Coleman v. Court of Appeals of Maryland, 132 S.Ct. 1327, 1340 n. 2 (2012) [The Pregnancy Discrimination Act was enacted as an addition to the section defining terms used in Title VII.] .

[5]The undersigned is constrained to note that Plaintiff has jumbled together, in one cause of action, claims for hostile work environment, disparate treatment sex discrimination, and retaliation, even though these are totally different claims requiring different standards of proof, and as such should have been asserted in separate counts.  See Murphy v Suffolk County Community College, No. 10-251, 2011 WL 5976082 at * 7 (E.D.N.Y. Nov. 29, 2011)[Noting that Plaintiff's disparate treatment claim, hostile work environment claim, and retaliation claim are all distinct claims and should be alleged in separate counts.].  Since, for the reasons set forth hereinabove, these claims are all subject to dismissal in any event, the undersigned has not made any separate assignment of error due to the jumbling together of these claims in one cause of action.



within three hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the state agency's termination of its proceedings, whichever is earlier.  See 42 U.S.C. § 2000e-5(e).  Since South Carolina is a deferral state, the South Carolina Human Affairs Commission (SCHAC) is the appropriate state agency for purposes of G4S's motion, and the record shows that Plaintiff did file a charge of discrimination with SCHAC dated October 13, 2011.  See Plaintiff's Exhibit J.  However, G4S argues in its motion that the filing of this administrative charge by the Plaintiff did not exhaust her administrative remedies with respect to any Title VII claims for gender based disparate treatment (other than with respect to her pregnancy), sexual harassment, or retaliation, because Plaintiff failed to assert any such claims in her administrative charge.  Smith v. First Union Nat'l. Bank, 202 F.3d 234, 247 (4th Cir. 2000)["Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC [or SCHAC]"].  The undersigned is constrained to agree.

Plaintiff argues that she did assert a claim for sexual discrimination and, therefore, she has exhausted her remedies for sexual harassment and for disparate treatment based on her not receiving certain promotions.  See Plaintiff's Memorandum in Opposition to Summary Judgment, pp. 4-5.  However, a plain reading of Plaintiff's administrative charge of discrimination confirms that she only asserted a claim of sex discrimination based on pregnancy discrimination in that document, and did not assert a claim for sexual harassment, gender based disparate treatment (other than with respect to her pregnancy), or any retaliation claim (again, other than with respect to her pregnancy).  Plaintiff's Exhibit J; see also Plaintiff's Deposition Exhibit 42 (Initial Inquiry Questionnaire).  Where the initial inquiry form asked Plaintiff to check all the forms of discrimination that allegedly applied

7



to her, she only checked "fired" (and listed the date 06/21/11) and "pregnancy" (06/21/11) when indicating what her claim of discrimination was based on. Id. at p. 3. Plaintiff then checked the "Sex (including sexual harassment or pregnancy)" box on the following page, before stating that her employer was notified "6/9/11 Pregnancy". Id. at p. 4. Plaintiff was then asked to state, for each item that she had checked, what had happened to her, and Plaintiff provided a detailed statement beginning with a conversation in April 2011 discussing that she and her husband planned to have another child through her termination in June 2011, in which she *only* discusses her allegations regarding being discriminated against based on her pregnancy. See Plaintiff's Deposition Exhibit 42, p. 5 & Attachment. Plaintiff's statement contained no allegations regarding any disparate treatment, harassment or gender based retaliation not related to her pregnancy, which is discussed separately herein in Section II, infra. Additionally, in her Administrative Charge filed on October 13, 2011, Plaintiff again asserts that she was discriminated and retaliated against due to her sex and pregnancy, based on her having told her supervisor that she was pregnant, which resulted in her being terminated. See Plaintiff's Exhibit J. There are no allegations in these filings relating to Plaintiff having been denied promotions because of her sex, or any other allegations of discrimination based on her sex, other than with respect to her being pregnant.

In determining the scope of Plaintiff's exhausted claims, the Court is bound by the scope of Plaintiff's claims as are set forth in her administrative charge, and only those discrimination claims set forth in the administrative charge and reasonably related thereto or were developed by a reasonable investigation of the claims set forth in the original charge may be maintained in a subsequent Title VII lawsuit. Bryant v. Bell Atlantic MD., Inc., 288 F.3d 124, 132 (4th Cir. 2002); Evans v. Techs. Applications & Serv., Co., 80 F.3d 954, 963 (4th Cir. 1996); Jones, 551 F.3d at 300.



"Allowing a complaint to encompass allegations outside the ambit of the predicate [administrative] charge would circumscribe [the administrative agency's] investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely . . . charge"]; Dorsey v. Pinnacle Automation, Co., 278 F.3d 830, 838 (8th Cir. 2002)(internal quotation marks and citations omitted).  Here, Plaintiff's administrative charge clearly only asserted a claim for pregnancy discrimination based on her sex, and did not set forth any other claim for sexual disparate treatment or retaliation other than with respect to her pregnancy.  Plaintiff's administrative charge also did not assert a claim for hostile work environment sexual harassment.  Cf. DeClue v. Central Illinois Light Co., 223 F.3d 434, 437 (7th Cir. 2000)[Sexual harassment is a "distinct . . . form of intentional sex discrimination].

Therefore, Plaintiff's sex discrimination, sexual harassment, and gender based retaliation claims as set forth in her First Cause of Action are all subject to dismissal to the extent that they are not based on her pregnancy.  Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995)[Claims that exceed the scope of an administrative charge and any claim that would have naturally arisen from an investigation thereof are procedurally barred].[6]

---

[6]It should be noted that Plaintiff also references the South Carolina Human Affairs Law (SCHAL), which would be a claim under state law, in both her First Cause of Action as well as in her Second Cause of Action.  See Complaint, ¶ ¶ 35, 45.  However, Plaintiff never discusses her discrimination claims separately under a SCHAL analysis.  While the analytical framework for considering Plaintiff's claims under SCHAL would be the same as that for her Title VII claims; see Orr v. Clyburn, 290 S.E.2d 804, 806 (S.C.1982); Tyndall v. National Education Centers, 31 F.3d 209 (4th Cir.1994); S.C.Code Ann. & 1-13-10 et al (2003); cf. Cromer v. Greenwood Com'n of Public Works, No. 92-CP-24-392, 1993 WL 328182, *4 (S.C.Com.Pl. Feb. 3, 1993)[The court notes that its ruling accords with the interpretation of federal employment discrimination laws upon which our state employment discrimination laws are modeled.]; Robinson v. BGM America, Inc., ___ F.Supp. 2d ___, 2013 WL 4042187 at * 22 (D.S.C. Aug. 8, 2013); SCHAL does have a different timetable for exhaustion of remedies prior to the filing of a lawsuit.  See S.C.Code Ann. § 1-13-90(d)(6). (continued...)



## II.

### (Second Cause of Action)

In her Second Cause of Action, Plaintiff contends that G4S discriminated against her in violation of Title VII, as amended by the Pregnancy Discrimination Act, when it terminated her employment because she was pregnant.[7]

In so far as Plaintiff has asserted this claim as a disparate treatment claim, a disparate treatment claim requires proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiff has not argued that there is any direct evidence of pregnancy discrimination in this case,[8] and G4S

---

[6](...continued)
Plaintiff's Complaint does not contain any allegations relating to the exhaustion of her administrative remedies under SCHAL; see Complaint, ¶ 1; and therefore to the extent Plaintiff is attempting to assert her claims under SCHAL, that statute should be dismissed as an avenue for relief in the Complaint.

[7]As with her First Cause of Action, Plaintiff has improperly intermingled language in her Second Cause of Action wherein she discusses, at various points, disparate treatment, retaliation, and hostile work environment all in one cause of action. See Murphy, 2011 WL 5976082 at * 7 [Noting that Plaintiff's disparate treatment claim, hostile work environment claim, and retaliation claim are all distinct claims and should be alleged in separate counts.]. Since Plaintiff did check both the disparate treatment and retaliation boxes on her Administrative Charge, the undersigned has discussed these two theories of recovery (to the extent addressed by the parties) hereinabove. However, as previously discussed, supra, Plaintiff failed to exhaust her administrative remedies with respect to any hostile work environment claim, and that claim (to the extent asserted) should therefore be dismissed. Dennis, 55 F.3d at 156 )[Claims that exceed the scope of an administrative charge and any claim that would have naturally arisen from an investigation thereof are procedurally barred].

[8]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); see Williams v. General Motors Corp, 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).



argues that Plaintiff has failed to present sufficient circumstantial evidence to create a genuine issue of fact as to whether her termination occurred because of her pregnancy under the McDonnell Douglas proof scheme to survive summary judgment.

      The United States Supreme Court articulated a three-part formula for analyzing discrimination cases in McDonnell Douglas. First, Plaintiff must establish a prima facie case of discrimination. If a prima facie case is established, a rebuttable presumption is created that the Defendant unlawfully discriminated against her. Second, once this presumption has been established, the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reason for its actions. Third, if the Defendant shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the Defendant were really based on Plaintiff's pregnancy. McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-256 (1981); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

      In order to meet the first prong of the McDonnell Douglas formula and establish a prima facie case of pregnancy discrimination, Plaintiff must show (1) that she is a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she was subjected to an adverse employment action (here - termination); and (4) that she was replaced by someone outside of her protected class, or there is some other evidence giving rise to an inference of unlawful

11



discrimination.  See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001);  Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995).  See also Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119, 1125 (N.D.W.Va. 1996).  It is undisputed that Plaintiff was a member of a protected class (she was pregnant), and that she was subjected to an adverse employment action when she was terminated. Therefore, Plaintiff has met the first and third prongs of her prima facie case.  However, G4S disputes that Plaintiff was performing her job satisfactorily, or that her termination occurred under circumstances giving rise to an inference of discrimination.[9]

**Job Performance**.  With respect to G4S's first argument, the undersigned finds that (considered in the light most favorable to the Plaintiff) sufficient evidence has been submitted to give rise to a genuine issue of fact as to whether Plaintiff was satisfactorily performing her job to establish the second prong of her prima facie case.  Concededly, the evidence does reflect that Plaintiff had numerous write ups over the years related to her reporting late to work (including being suspended and receiving a notice of final warning on October 13, 2008); see Plaintiff's Deposition Exhibits 21-23, 26-27, 31, 33-34; as well as other write ups and an oral warning over the years dealing with various issues, including not performing an assigned patrol duty, her boots being non-compliant, and failure to timely complete certain required computer training.  See Plaintiff's Deposition Exhibits 25, 29, 32, 35.[10]  However, all of these matters predated Plaintiff's evaluation in early 2011, where

---

[9]Neither side makes any argument about who replaced Plaintiff, or whether her replacement was someone from outside of her protected class.

[10]There was also a final warning given on March 16, 2009 related to showing a scar in a personal area Plaintiff had from an operation because someone's spouse was considering the same type of operation that Plaintiff had undergone.  See Plaintiff's Deposition, pp. 129-130; Plaintiff's

(continued...)



Plaintiff was ranked as competent in all categories; see Plaintiff's Exhibit A to Memorandum in Opposition to Summary Judgment; and there is no evidence to show that Plaintiff had any other write-ups or change in her performance between that evaluation and G4S discovering the picture at issue in this case, which is what G4S contends led to Plaintiff's termination. Brown v. Chicago Transit Authority, No. 97-7041, 1999 WL 495622 at *5 (N.D.Ill. June 28, 1999) [Plaintiff's general job performance, not the specific incident(s) which may have precipitated her termination, is the proper question to consider in determining whether Plaintiff can establish the satisfactory performance element of her prima facie case]; Crosby v. Federal Signal Corp., No. 97-4967, 1998 WL 603125 at *5 (N.D.Ill. Sept. 4, 1998).

Therefore, while G4S may contend that it considered Plaintiff's earlier disciplinary matters in combination with the matter involving the picture at issue in deciding whether to terminate the Plaintiff, considered in the light most favorable to the Plaintiff, the fact that Plaintiff had been rated as satisfactorily performing her job on the evaluation immediately preceding her termination is sufficient to give rise to a genuine issue of fact with respect to the second prong of her prima facie case to survive summary judgment. Muhammad v. Klotz, 36 F.Supp.2d 240, 243 (E.D.Pa.1999)["[A]t the summary judgment stage the only inquiry ... is 'whether the evidence presents a sufficient disagreement to require submission to [the trier of fact]' "], citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-252 (1986).

**Inference of Discrimination**. With regard to the fourth prong of her prima facie case, Plaintiff argues in her brief that males engaged in the same or similar conduct that she did and were

---

[10](...continued)
Deposition Exhibit 28.

13



not terminated, thereby giving rise to an inference that her termination was due to a discriminatory animus. Specifically, Plaintiff contends that she was fired while numerous male employees were not fired for their alleged postings of pictures. However, the evidence, even considered in the light most favorable to her, does not support Plaintiff's contention that male (i.e., non-pregnant) employees were involved in conduct of a similar nature and were not terminated, nor is there evidence that G4S was aware of postings of any unauthorized pictures by other employees or that there even were any such postings. Smith v. Sunbelt Rentals, Inc., 356 Fed.Appx. 272 at ** 6-7 (11th Cir. Dec. 10, 2009)[To survive summary judgment, Plaintiff must show that she and an alleged comparable employee are "similarly situated in all relevant respects"]; Robinson v. United Parcel Services, Inc., No. 06-2601, 2007 WL 3484743 at * 4 (N.D.Ga. Nov. 14, 2007)[Proper comparator for purposes of a wrongful termination claim is one who is similarly situated in all relevant respects]; Shivers v. S.C. Dept. of Corrections, No. 09-3357, 2011 WL 4549261, * 7 (D.S.C. Sept. 30, 2011)[Noting that to be similarly situated employees had to have been "engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it"] (internal citations omitted).

The evidence shows that Plaintiff had her photograph taken at her work station inside the Summer Nuclear Station while having her weapon drawn, which was a violation of G4S rules and policy, including "Level 1" violations, which call for "Discharge." Workman Affidavit, ¶¶ 5, 10 & Exhibits A, G-H, K; Plaintiff's Deposition Exhibit 4. This photograph was then posted on her social network "myspace" account. See Workman Affidavit, ¶ 10 & Exhibits G-I. Plaintiff tries to argue in her brief that the photograph at issue was taken prior to the policy against such conduct being enacted; however, G4S has presented evidence which shows that SPP-234, which governs the use



of cameras at the Summer Nuclear Station, had been in effect since May 2004, with minor revisions taking place in November 2007 and August 2010. See Workman Affidavit, ¶ 7, Exhibit D (Sealed Document). Plaintiff has not disputed the Defendant's evidence with respect to the existence of this policy, and since Plaintiff did not begin working for G4S until 2006, the photograph at issue could not have been taken prior to the policy being enacted. See Plaintiff's Deposition, pp. 62, 65. Further, G4S also points out that Plaintiff's actions were in violation of Nuclear Security Guideline #21 and constituted a Level 1 violation of G4S' Discipline Policy. Workman Affidavit, ¶¶ 12, 16, Exhibits K-L. Again, Plaintiff has not disputed the existence of this Guideline and Policy. It is noted that under the "Categories of Discipline Guidelines", the penalty for a Level 1 violation, even a "First Offense", is "Discharge"; Workman Affidavit, Exhibit 8 F, p. 4 (Court Docket No. 27-5, p. 38); and Defendant contends this evidence confirms that this was the basis for Plaintiff's termination.

　　　　To counter Defendant's contention and to support her argument that male employees engaged in similar conduct and were not disciplined, Plaintiff has attached numerous pictures to her memorandum in opposition to summary judgment as Attachment G (Social Media), which she contends show that G4S allowed "male employees to post pictures that could be construed as a breach of national security and yet don't punish or terminate the said employees." See Plaintiff's Memorandum in Opposition to Summary Judgment, p. 3. However, G4S correctly points out in its reply that all Plaintiff has done is submit a bunch of pictures as attachments to her response, but fails to identify who the individuals in any of these photographs are, or to articulate in any way whatsoever how these alleged pictures are or were comparable to the circumstances present in her case.[11]

---

[11]Defendant also represents in its brief that in her deposition Plaintiff named Craig Yokum, Monte Simmons, Carl Turner, Steven Zoko and Terry Howard as being employees who posted
(continued...)



Plaintiff has failed to provide any specific information regarding these photographs, discuss whether the individuals depicted were employees of G4S when the pictures were taken and/or when they were posted, indicate where the pictures were taken, or whether permission from G4S was received to have the pictures taken. Plaintiff also has not provided any information as to whether Workman, Plaintiff's supervisor, was the supervisor of the individuals in the photographs and/or was even aware of these photographs.

Conversely, the Defendant has provided information about these photographs from David Young, G4S's Project Manager. Young attests that he has reviewed Plaintiff's exhibits, and that photographs 2-9, 12-13, and 20-22 were not even taken at the Summer Nuclear Station. <u>See Young Declaration</u>, ¶ 8. Rather, Young attests that these photographs (2-9, 12-13, and 20-22) were posted by Officer Chris Reid when he was not an employee at the Summer Nuclear Station.[12] <u>Id.</u> With regard to photographs 10-11, 14-17, and 23-32, Young attests that those photographs were all taken at the Summer Nuclear Station's training range while the officers were engaged in training exercises - not at the officer's duty station inside the nuclear plant. In addition to cameras not being prohibited at the training range, Young also attests that he has personal knowledge that these photographs were all released by the Manager, Nuclear Protection Services, consistent with Security

_____

[11](...continued)
photographs on the internet, citing to <u>Plaintiff's Deposition</u>, pp. 166-168, 170-171. However, neither side provided pages 170-171 for the Court's review, while pages 166-168 only mention Yokum and Simmons. In any event, as discussed hereinabove, Plaintiff has not tied any of the photographs submitted as Attachment G to her brief to any of these individuals. <u>House v. New Castle County</u>, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].

[12]Reid was hired by G4S on March 13, 2006 and left the Summer Nuclear Station for another position on February 21, 2011. Officer Reid was then rehired at the Summer Nuclear Station on June 24, 2013. Young attests that the dates on these photographs show they were taken when Reid was not employed by the Defendant. <u>See Young Declaration</u>, ¶¶ 4, 8.



Plan Procedure ("SPP") 234.  See Young Declaration, ¶ 10.  Concerning photographs 18-19, Young attests that it is readily apparent that these photographs were taken by Howard when he was attending an off-site training class at Barrett Firearms Manufacturing, Inc., and were not taken at the Summer Nuclear Station.  See Young Declaration, ¶ 9.  Finally, with regard to the remaining photographs (numbered 33-38) submitted by the Plaintiff, Young attests that these photographs were also not taken at the Summer Nuclear Station.  See Young Declaration, ¶ 11.  Plaintiff has not disputed any of these representations by Young, or offered any evidence or even argument to counter Young's testimony.

   In sum, the exhibits submitted by the Plaintiff do not give rise to a genuine issue of fact as to whether a similarly situated person outside of Plaintiff's class engaged in the same conduct she did and received more favorable treatment, as the evidence shows Plaintiff's photograph exhibits and the circumstances under which they were taken are not remotely similar to her situation.  Smith, 356 Fed.Appx. 272 at ** 6-7 [To survive summary judgment, Plaintiff must show that she and the alleged comparable employees are "similarly situated in all relevant respects"]; Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)[holding that before employees can be viewed as comparable for purposes of invidious discrimination, they must have "dealt with same supervisor, [been] subject to the same standards and engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."].[13]  The undersigned can

---

[13]Plaintiff has also failed to cite to the disciplinary histories of any of the male employees identified by her in her deposition, or to show similarities between her employment situation and the circumstances of those male employees.  Mahomes v. Potter, 590 F.Supp.2d 775, 784 (D.S.C. 2008) [Courts will generally conclude that employees are not appropriate comparators where the disciplinary history of the two employees is not similar]; Mulvey v. BellSouth Telecommunications, Inc., No. 08-3547, 2010 WL 3782433, at * 10 (D.S.C. Sept. 20, 2010)[Noting that "employees with different disciplinary records will often receive different punishments for . . . misconduct based upon their past records"].



discern no inference of discrimination against the Plaintiff based on her pregnancy in this evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) [there must be evidence on which a jury could reasonably find for the Plaintiff]; Yarnevic v. Brink's Inc., 102 F.3d 753, 757-758 (4th Cir. 1996) [holding that remote inferences and conclusory allegations cannot defeat summary judgment]. Therefore, other than her own subjective speculation and conjecture, Plaintiff has failed to present any evidence to show that other employees who were not members of her protected class were treated more favorably than she was under similar circumstances. Boden v. U.S. Amada Ltd., 978 F.Supp. 657, 659 (E.D.N.C. 1997) [former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination].

Nor has Plaintiff presented any *other* evidence with respect to her termination sufficient to give rise to an inference of unlawful discrimination. The mere fact that Plaintiff was pregnant at the time of her termination, standing alone and without any supporting evidence to show that the *reason* she was terminated was because she was pregnant, is not enough to survive summary judgment on this claim. Cook v. CSK Transp. Corp., 988 F.2d 507, 513 (4th Cir. 1993) ["[U]nsupported allegations do not establish a prima facie case of [ ] discrimination...."]. Rather, the evidence, considered in the light most favorable to the Plaintiff, shows that when Workman arrived at work on Thursday, June 9, 2011, there was a package on his desk from Bedenbaugh that showed Plaintiff may have violated several G4S policies, including Level 1 offenses which, according to G4S' disciplinary guidelines, provide for "discharge," even on a first offense. That same day, Plaintiff told Workman that she was "pretty sure" she was pregnant, and was going to need to be placed on light duty at some point in the future. Workman told her that the Defendant did not have

18



any light duty jobs, and that she would have to see his assistant about obtaining FMLA forms. Workman then spoke with Bedenbaugh on Monday, June 13,2011, about the information he had left Workman, following which Workman and Captain Kate Bassett met with the Plaintiff. The evidence further reflects that Plaintiff was, at least initially, not truthful with Workman and Bassett about whether she had engaged in the conduct shown in the material provided by Bedenbaugh, and that it was only after she was presented with the evidence showing her conduct that she admitted what she had done, although she blamed the posting of the picture at issue on her myspace account on her husband. Workman then met with witnesses, took statements, reviewed the applicable policies, and prepared an Employee Termination Review Package on June 15, 2011. This package showed several policy violations by the Plaintiff, including Level 1 (discharge) violations. Defendant's Exhibit K. Workman attests that, during his time as a Project Manager, he has never retained an employee with similar violations. Workman Affidavit, ¶ 13. Plaintiff has provided no evidence to dispute this sworn statement. Workman's recommendation that Plaintiff be terminated was thereafter approved by the Director of Nuclear Operations, and Vice President of Nuclear Operation, Labor Relations, Legal and Human Resources, as required by the Defendant's policies. Defendant's Exhibit F (Court Docket No. 27-5, p. 38).

There is not any indication in any of this evidence relating to Plaintiff's termination that her being pregnant was ever considered or even discussed, nor has Plaintiff provided any evidence to show, or to create even an inference, that her being pregnant had anything whatsoever to do with the consideration by management of whether she should be terminated for her violation of the policies at issue. Nichols v. Caroline County Bd. of Educ., 123 F.Supp.2d 320, 327 (D.Md. 2000)[Plaintiff's contention that supervisors subjected her to adverse employment actions "because



I am who I am" insufficient to establish discriminatory character to their disagreements and misunderstandings]. Plaintiff's only other reference point for this claim would be Workman's statement, made several months earlier, that if she and her husband were planning on having another child, he hoped she would not be pregnant during an outage, because that's when they needed officers the most. This one-time statement, totally disassociated with the events of June 9-15, 2011, is not enough to establish a question of fact as to whether Plaintiff was really terminated several months later because she was pregnant. Cf. McNeal v. Montgomery County, Md., 307 Fed.Appx. 766, 774 (4th Cir. 2009)["[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated and [u]nless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of [discrimination."], quoting Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir.1999) (internal quotation marks omitted) (abrogated on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003)) (quoting McCarthy v. Kemper Life Ins. Co., 924 F.2d 683, 686 (7th Cir.1991)).

Therefore, while Plaintiff obviously believes her discharge was not justified, she has failed to present evidence sufficient to establish an inference of pregnancy discrimination with respect to her discharge, and this cause of action should be dismissed. Rucker v. Greenville Co. Sheriff Dep't., No. 10-1533, 2012 WL 951789, * 2 (D.S.C. March 20, 2012)[Conclusory allegations or denials, without more, are insufficient to preclude the granting of a summary judgment motion]; Sullivan v. River Valley School District, 197 F.3d 804, 815 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000) ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....]; cf. Rudolph v. Hechinger, 884 F.Supp. 184, 188 (D.Md. 1995) [The discrimination statutes do] not protect against unfair business decisions - only against



decisions motivated by unlawful animus"], citing <u>Turner v. Texas Instruments, Inc.</u>, 555 F.2d 1251, 1257 (5th Cir. 1977); <u>Colbert v. Tapella</u>, 677 F.Supp. 2d 289, 295 (D.D.C. 2010)(quoting <u>Hairsine v. James</u>, 517 F.Supp.2d 301, 308-309 (D.D.C. 2007)["[T]he scope of review in employment discrimination cases is more narrow than [Plaintiff] wishes because federal courts are not review boards for local employment decisions . . . . A personnel decision can be silly, it can be unfair, and it can be short-sighted without being illegal; Title VII protects discriminatory decisions, not wrong ones."]).

Finally, although (as noted) Plaintiff referenced the concept of "retaliation" in discussing her Second Cause of Action in the Complaint, in her brief she discusses her claim as a disparate treatment claim, although while doing so she uses both the disparate treatment and retaliation prima facie cases. <u>See</u> <u>Plaintiff's Brief</u>, pp. 6, 7-8. Therefore, the undersigned has addressed Plaintiff's claim hereinabove using a disparate treatment analysis. The prima facie case for a retaliation claim is different from the disparate treatment prima facie case discussed herein on p. 11, <u>supra</u>, as it requires 1) that the employee engaged in protected activity; 2) that the employer took an adverse employment action against the employee; and 3) that there is a causal connection between the protected activity and the adverse action. <u>Williams v. Cerberonics, Inc.</u>, 871 F.2d 452, 457 (4th Cir. 1989); <u>Munday v. Waste Management of North America</u>, 126 F.3d 239, 242 (4th Cir. 1997); <u>Blankenship v. Buchanan General Hosp.</u>, 140 F.Supp.2d 668, 674 (W.D.Va. 2001).

While Plaintiff arguably engaged in protected activity when she told Workman she was pregnant, and she suffered an adverse employment action when she was discharged, for the reasons already discussed hereinabove, <u>supra</u>, Plaintiff has failed to present evidence sufficient to give rise to a genuine issue of fact that the *reason* she was terminated was because the Defendant



wanted to retaliate against her for telling Workman she was pregnant.  Cecilino v. Allstate Ins. Co., 908 F.Supp. 519, 532 (N.D.Ill. 1995) [a simple showing that an adverse action occurred after a complaint of discrimination 'is not even enough to make out a prima facie case of retaliation, let alone to survive a motion for summary judgment.']; Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) [Plaintiff "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action(s)"]; see also LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993) ["Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole... must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [retaliatory animus].'"] [pretext stage] (citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)).  Therefore, to the extent Plaintiff is also seeking relief based on a pregnancy retaliation claim, any such claim should be dismissed.

### III.

### Third Cause of Action

In her third cause of action, Plaintiff claims that she was discharged by the Defendant for exercising her rights under the FMLA.[14]  The Family and Medical Leave Act provides that covered employees are entitled to a total of twelve (12) work weeks of leave during any twelve (12) month period for family and health related matters, as well as a right to be restored to the position of employment held by the employee when the leave commenced, or to an equivalent position. 29

---

[14]Unlike her Title VII claims, Plaintiff did not need to exhaust administrative remedies through the EEOC or SCHAC to proceed with this claim.  Breedlove v. Cabou, 296, 295 F.Supp.2d 253, 276 (N.D.N.Y. 2003).



U.S.C. §§ 2612, 2614. The FMLA also protects employees from discrimination or retaliation for exercising their rights under that statute. 29 U.S.C. § 2615(a)(1) and (2). Stated another way,

> [t]he FMLA creates two types of claims: (1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act; and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act.

Carr v. Mike Reichenbach Ford Lincoln, Inc., No. 11-2240, 2013 WL 1282105 at *6 (D.S.C. Mar. 26, 2013)(quoting Gleaton v. Monumental Life Ins. Co., 719 F.Supp.2d 623, 633, n. 3 (D.S.C. 2010));

Sommer v. The Vanguard Group, 461 F.3d 397, 399 (3rd Cir. 2006).

Plaintiff asserts an FMLA retaliation claim in her Complaint; see Complaint; §§ 49-57; and this is how G4S addressed Plaintiff's claim on the merits in its initial brief. See Defendants' Memorandum in Support of Summary Judgment, pp. 23-28.[15] However, in her response, Plaintiff discusses her claim as an interference claim; Plaintiff's Memorandum in Opposition to Summary Judgment, pp. 9-11; and G4S did address an interference claim in its reply brief to counter Plaintiff's arguments raised in her opposition to summary judgment. Although, based on these filings, the undersigned has addressed Plaintiff's FMLA claim as both an interference and retaliation claim, Plaintiff's counsel is cautioned that in the future he must clearly set forth which type of claim his client wishes to proceed under or risk the dismissal of improperly pled claims. See also, n n. 5 & 7, supra.

Turning then to the merits of these claims, G4S does not dispute for purposes of

---

[15]G4S did state in a footnote in its original brief that Plaintiff would not be able to proceed under an FMLA interference claim in any event because her employment was terminated prior to her taking FMLA leave. See Defendants' Memorandum in Support of Summary Judgment, pp. 23-24, n. 17.



summary judgment that it meets the criteria for being an "employer" under the Act, and that Plaintiff was a covered employee entitled to FMLA leave. G4S does contest, however, that it ever denied Plaintiff FMLA benefits to which she was entitled, or otherwise interfered with her FMLA rights or retaliated against her for exercising those rights.

### Interference Claim

Plaintiff alleges with respect to her Interference Claim that G4S interfered with her rights under the FMLA when it fired her after she had informed Workman on June 9, 2011 that she would need to take FMLA leave and/or be transferred to a light work job at a future date due to her being or becoming pregnant. Reid v. Smithkline Beecham Corporation, 366 F.Supp.2d 989, 998 (S.D.Cal. 2005) [holding that claim that employee was terminated as a result of requesting and taking FMLA protected leave was properly analyzed as an interference cause of action]. Plaintiff testified that Workman responded to her statement by saying that she would not need it and that they did not have any type of light work. See Plaintiff's Deposition, pp. 145. When Plaintiff inquired as to what Workman meant, he said that the individual she needed to get the paperwork from was not present on that day, which was a Friday. See Plaintiff's Deposition, pp. 152-153. Plaintiff then contends that she was terminated on Monday, prior to being able to get her FMLA paperwork. See Plaintiff's Deposition, p. 153.

"To establish unlawful interference with an entitlement to FMLA benefits, an employee must show that: (1) [s]he was an eligible employee, (2) [her] employer was covered by the Act, (3) [s]he was entitled to leave under the FMLA, (4) [s]he gave [her] employer adequate notice of [her] intention to take leave, and (5) the employer denied [her] FMLA benefits to which [s]he was entitled." Carr, 2013 WL 1282105 at * 7 (quoting King v. Blanchard Mach. Co., No. 10-3219, 2012



WL 4586177 at * 5 (D.S.C. Sept. 28, 2012)); <u>Makowski v. Smithamundsen LLC</u>, 662 F.3d 818, 825 (7th Cir. 2011); <u>see</u> <u>Taylor v. Progress Energy, Inc.</u>, 493 F.3d 454, 457 (4th Cir. 2007)[Under the FMLA, an employee has a "right to take a certain amount of unpaid medical leave each year and the right to reinstatement following such leave."].  Furthermore, Plaintiff must show that the interference caused her prejudice.  <u>Downey v. Strain</u>, 510 F.3d 534, 540 (5th Cir. 2007)["[T]he FMLA's remedial scheme . . . requires an employee to prove prejudice as a result of an employer's noncompliance."], (citing <u>Ragsdale v. Wolverwine World Wide, Inc.</u>, 535 U.S. 81, 90 (2002)); <u>Anderson v. Discovery Communications, LLC</u>, No. 11-2195, 2013 WL 1364345, at * 7 (4th Cir. Apr. 5, 2013)[In order to establish a FMLA interference claim, Plaintiff has to prove not only interference, but that the violation prejudiced her]; <u>Croy v. Blue Ridge Bread, Inc.</u>, No. 12-00034, 2013 WL 3776802, at * 8 (W.D.Va. July 15, 2013)[Plaintiff must demonstrate that he was prejudiced in some way].

        As already noted, G4S does not dispute the first three elements of this claim , and in its reply G4S does not address whether Plaintiff satisfies the fourth element of her FMLA interference claim.  <u>See</u> Defendant's Reply in Opposition to Summary Judgment, pp. 6-7.  Rather, G4S argues that Plaintiff has not satisfied the final element because she was not denied any leave to which she was entitled under the FMLA, nor did G4S fail to return her to work after a qualifying leave.  <u>Id</u>. at p. 7.

        Considered in the light most favorable to the Plaintiff, the evidence establishes that on June 9, 2011, Plaintiff told Workman that "I'm pretty sure I'm pregnant," and that she would need to get the paperwork to apply to be on light duty because she would not be able to carry a weapons belt or long gun while she was pregnant.  Plaintiff testified that Workman responded by telling her that G4S did not have light duty jobs, and that when she asked for FMLA paperwork, Workman told her that she would not need it.  <u>See</u> Plaintiff's Deposition, pp. 146, 152-153.  When Plaintiff asked



him what he meant by that, he said that she would have to get the paperwork from Brenda, his administrative assistant, and that she wasn't there.  See Plaintiff's Deposition, pp. 152-153.  The evidence further shows that, that same day, Workman received the information about Plaintiff disseminating on the internet a photograph of her at work displaying her duty weapon in a shooting position, a Level 1 policy violation.  Workman Affidavit, ¶ 5 & Exhibit A; Plaintiff's Deposition Exhibit F.  As previously discussed, Plaintiff was then terminated following the investigation of this incident.  See discussion, supra.

Plaintiff only speculates, and has presented no evidence to show, that her being terminated was in any way an attempt to interfere with her right to take FMLA leave.  House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim].  Indeed, it does not even appear from the evidence that Plaintiff was at that time requesting or even in need of FMLA leave; rather, she was indicating that she was going to need it at some point in the future as her pregnancy progressed.  Cf. Sommer, 461 F.3d at 399 [interference claim is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA].  G4S further contends that an intervening event occurred when Plaintiff's supervisor became aware that she had violated numerous policies in place at the Summer Nuclear Station, including Nuclear Security Guideline #21 regarding use of firearms, Security Plan Procedure 234 regarding use of cameras, and G4S' Discipline Policy prohibiting the unauthorized and careless use of firearms. See discussion, supra.

As previously discussed, Plaintiff admits that she posed with her weapon drawn at her duty station in the nuclear plant, and that a picture of her doing so was posted on the internet through her myspace account.  Plaintiff is not insulated from discipline merely because she had indicated she

26

was going to be seeking FMLA leave.  <u>Bone v. G4S Youth Servs., LLC</u>, 686 F.3d 948, 959 (8th Cir.

2012)[Fact that Plaintiff took FMLA leave does not insulate an employee from termination for

reasons unrelated to the taking of her FMLA leave]; <u>Nichols.</u>, 123 F.Supp.2d at 327 [Plaintiff's

contention that supervisors subjected her to adverse employment actions "because I am who I am"

insufficient to establish discriminatory character to their disagreements and misunderstandings]; <u>Ross</u>

<u>v. Communications Satellite Corp.</u>, 759 F.2d 355, 365 (4th Cir. 1985) <u>overruled on other grounds</u>,

<u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989) ["Title VII serves the laudable goal of protecting

employee access to agencies and courts.  It does not shield employees from normal sanctions for

misconduct."].

> [T]he FMLA is not a strict-liability statute.  <u>Throneberry v. McGehee Desha County</u>
> <u>Hosp.</u>, 403 F.3d 972, 977 (8th Cir. 2005).  An employee who requests FMLA leave has
> no greater protection against termination for reasons unrelated to the FMLA than she
> did before taking the leave.  <u>See</u> <u>id</u>. . . . Therefore, an employer who "interferes with
> an employee's FMLA rights will not be liable if the employer can prove it would have
> made the same decision had the employee not exercised the employee's FMLA
> rights."  <u>Throneberry</u>, 403 F.3d at 977; <u>see also</u> <u>Bacon [v. Hennepin Cuonty Med.</u>
> <u>Ctr.]</u>, 550 F.3d [711,] 715 [(8th Cir. 2008)]; <u>Phillips [v. Mathews]</u>, 547 F.3d [905,]
> 911-912 [(8th Cir. 2008)].

<u>Estrada v. Cypress Semiconductor, Inc.</u>, 616 F.3d, 866, 871 (8th Cir. 2010).

Therefore, this claim is without merit.

### Retaliation Claim

The FMLA also guarantees Plaintiff the right not to be retaliated against for exercising

her substantive FMLA rights. 29 U.S.C. §§ 2615(a)(2), 2615(b); <u>Taylor</u>, 493 F.3d at 457.  While

Plaintiff makes no arguments in her Memorandum in Opposition to Summary Judgment expressly

addressing such a claim, choosing instead to only address her claim as an interference claim, since

in her Complaint Plaintiff does allege that G4S retaliated against her for requesting to take FMLA



27

leave by terminating her the first work day after she requested FMLA forms to complete; see Complaint, ¶¶ 51, 54, 56-57; out of an abundance of caution, the undersigned has also addressed Plaintiff's FMLA claim as a retaliation claim.

A retaliation claim under the FMLA is analyzed under the same standards as are applied to a Title VII retaliation claim. See Laing v. Federal Exp. Corp., 703 F.3d 713, 718-719 (4th Cir. 2013); Dodgens v. Kent Mfg. Co., 955 F.Supp. 560, 565-566 (D.S.C. 1997) [appropriate analysis for retaliatory discharge under FMLA is that provided for Title VII for retaliatory discharge]. Pursuant to this standard, "[t]he employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action." Williams, 871 F.2d at 457; Munday, 126 F.3d at 242; Blankenship, 140 F.Supp.2d at 674. Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must demonstrate that the Defendant's proffered reason is pretextural. Id. ; Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 502 (4th Cir. 2001).

**Prima Facie Case**. It is undisputed that Plaintiff engaged in protected activity by exercising her rights under the FMLA by requesting FMLA forms from Workman, and that she suffered an adverse employment action when she was terminated. However, with respect to whether there is evidence of a causal connection between these events, G4S contends intervening events took place which broke any chain of inferential causation between the protected activity and her



28

termination, because the same day Plaintiff requested the FMLA forms from Workman, Bedenbaugh provided him with a photograph of Plaintiff on the internet showing her displaying her service weapon at a duty station in the Summer Nuclear Station.  Workman Affidavit, ¶ 10; Workman Declaration Exhibits G-I; Plaintiff's Deposition Exhibit 38.  It is undisputed in the evidence that Plaintiff's actions violated numerous policies in place at the Summer Nuclear Station, including Nuclear Security Guideline #21 regarding use of firearms, Security Plan Procedure 234 regarding use of cameras, and G4S' Discipline Policy prohibiting the unauthorized and careless use of firearms; Plaintiff's Deposition Exhibit 40; Workman Affidavit Exhibits K-L; and an employee's violation of company policy is an intervening act that can break a causal connection between the protected activity and an adverse employment action.  Ford v. Gen. Elec. Lighting, LLC, No. 03-00024, 2004 WL 1280679 (W.D.Va. Feb. 6, 2004)[evidence of causation of retaliation for complaint made two months before termination "would be virtually non-existent in light of intervening fight" for which the plaintiff was terminated]; cf. Allen v. Federal Express Corp., No. 09-17, 2011 WL 1260225 n. 6 (M.D.N.C. Mar. 31, 2011)[causal connection between employee's filing of a charge with the EEOC and termination was broken by intervening incident where she threatened coworker].

However, in this particular case, it is unclear whether Workman saw the photograph before or after Plaintiff had requested FMLA forms, for which he had referred her to Brenda.  In any event, although the evidence as to the closeness in time of the protected activity and the adverse employment action "far from conclusively establishes the requisite causal connection, it arguably satisfies the less onerous burden of making a prima facie case of causality."  Yashenko v. Harrah's NC Casino Co, LLC, 446 F.3d 541, 551 (4th Cir. 2006)(quoting Williams v. Cerberonics, Inc., 871 F.2d at 457).  Therefore, in order to allow for a further discussion of this claim only, the undersigned



29

has considered Plaintiff's retaliation prima facie case as having been established.  See Heady v. US Enrichment Corp., 146 Fed.Appx. 766, 770-771 (6th Cir. 2005) ["[T]emporal proximity is sufficient to meet the low burden required to establish a prima facie case of retaliation in violation of the FMLA...."]; see also Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago, 104 F.3d 1004, 1013 (7th Cir. 1997)[noting that "suspicious timing does constitute circumstantial . . . evidence to support a claim of discrimination"]; Jones v. City of Elizabeth City, North Carolina, 840 F.Supp. 398, 403 (E.D.N.C. 1996), aff'd., 2 F.3d 1149 (4th Cir. 1993).

**Legitimate, Non-Discriminatory reason**.  With respect to whether G4S had a legitimate, nondiscriminatory reason for it actions, as previously discussed, G4S has presented substantial evidence to show that Plaintiff was terminated for violating numerous G4S policies.  See discussion, supra; see also Workman Affidavit, ¶ 10; Workman Affidavit Exhibits G-I, K-L; Plaintiff's Deposition Exhibits 38 & 40.  This evidence is sufficient for G4S to meet its burden of production to show a legitimate, non-discriminatory reason for its actions.  See EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [The Defendant's burden is only one of production, not of persuasion].  Therefore, the Court must turn to the issue of whether sufficient evidence of pretext has been presented for Plaintiff to survive summary judgment on this claim.

**Pretext**.  In order to show pretext for her retaliation claim, Plaintiff must show that "but for" G4S's intent to retaliate against her for requesting FMLA leave, she would not have suffered the adverse job action at issue.  EEOC, 955 F.2d at 941; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234 (4th Cir. 1991).  While the law provides that evidence derived from circumstances and inferences may be used to support a claim, Plaintiff still must show that the job action would not have been taken "but for" the retaliation.  LeBlanc, 6 F.3d at 843 ["Direct or indirect



evidence of discriminatory motive may do, but 'the evidence as a whole... must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [retaliatory animus].'"]; Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000).  After careful review of the arguments and exhibits before the Court, the undersigned is constrained to find, to the extent that Plaintiff is even still pursuing an FMLA retaliation claim, that she has failed to present evidence of pretext sufficient to survive summary judgment.

First, Plaintiff admits that she was aware of the policies at the Summer Nuclear Facility regarding the use of weapons and cameras.  See Workman Affidavit, ¶ 11 & Exhibit G; Plaintiff's Deposition, p. 160.  Further, while Plaintiff initially denied to Workman that she had ever taken her duty weapon out of its holster while on shift, that she had ever drawn her weapon in a defensive position, and that anyone had ever taken a picture of her while in a duty position, the evidence shows that representation was untrue.  Only after she was shown the picture at issue did she apologize, say that she didn't remember posting the picture, and would have taken it off the internet if she had known that it was on her myspace page.  See Workman Affidavit, ¶ 11 & Exhibits G & J; Plaintiff's Deposition Exhibit 39.  There is no evidence to show that Bedenbaugh having provided Workman with the evidence concerning Plaintiff's policy violations had anything to do with her having requested FMLA forms from Workman. - as he had discovered this information prior to Plaintiff's protected activity and left it on Workman's desk that same morning.  The evidence also clearly establishes that Plaintiff's conduct did in fact violate these policies, and Workman attests that he has never not fired someone who engaged in this kind of violation, a representation that Plaintiff has provided no evidence to dispute. Mascioli v. Arby's Restaurant Group, Inc., 610 F.Supp.2d 419, 433 (W.D.Pa. 2008)["To prove FMLA retaliation, an employee must show that [her] employer



intentionally discriminated against [her] for exercising an FMLA right."] (quoting <u>Martin v. Brevard County Sch.</u>, 543 F.3d 1261, 1267 (11th Cir. 2008)).

There is no evidence, either direct or indirect, of a retaliatory motive in these facts, or to show that the Defendant's conduct was motivated by any retaliatory animus relating to her having indicated she was going to need to take FMLA leave. <u>LeBlanc</u>, 6 F.3d at 843 [To show pretext, the evidence must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by a retaliatory animus]; <u>Cecilino</u>, 908 F.Supp. at 532 [a simple showing that an adverse action occurred after a complaint of discrimination 'is not even enough to make out a prima facie case of retaliation, let alone to survive a motion for summary judgment.']; <u>Wilson v. Noble Drilling Services, Inc.</u>, 405 Fed. Appx. 909, 914 (5th Cir. Dec. 23, 2010)[While suspicious timing alone has been recognized as enough to establish a prima facie case, it alone is insufficient to show pretext]. Plaintiff's own speculation that this must have been the motivating factor behind her termination is not evidence, particularly in light of the substantial evidence to the contrary. <u>Gairola v. Virginia Dep't of General Services</u>, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985)[a case should be dismissed "...when the only evidence in support of the plaintiff's...case is based on unfounded conjecture...that [his] disfavorable treatment was the result of discrimination...."]; <u>see</u> <u>Ross v</u>, 759 F.2d at 366 ["Title VII serves the laudable goal of protecting employee access to agencies and courts. It does not shield employees from normal sanctions for misconduct."].

In sum, nothing in this evidence gives rise to an inference of pretext in G4S's decision to terminate Plaintiff, or demonstrates a retaliatory animus on the part of the Defendant. While Plaintiff obviously believes she was dealt with unfairly, and indeed the undersigned makes no finding as to whether the discipline meted out to her was appropriate, Plaintiff has simply provided no



evidence to support her general and conclusory allegations that the *reason* she was subjected to the adverse employment action discussed hereinabove was because she engaged in activity protected by the FMLA.   Sullivan, 197 F.3d at 815 ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....].   The mere fact that Plaintiff engaged in protected activity does not immunize her from actions by her employer which may otherwise be justified by her work record or performance; Bodoy v. North Arundel Hospital, 945 F.Supp. 890, 898 (D.Md. 1996); and while Plaintiff contests that her actions warranted termination, since she has offered no evidence (other than her own subjective belief and speculation) to show that the action she complains of was the result of unlawful retaliation, her retaliation claim should be dismissed.   Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)[Plaintiff may not "create a genuine issue of fact through mere speculation or the building of one inference upon another"]; see also Kariotis v. Navistar Intern. Transp. Corp., 131 F.3d 672, 680 (7th Cir. 1997) ["Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination.   Thus when an employee is discharged because of  an employer's honest mistake, federal anti-discrimination laws offer no protection."]; cf. Rudolph, 884 F.Supp. at 188 ["Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus"]; Staley v. Gruenberg, 13–1875, 2014 WL 2535403 (4th Cir. June 6, 2014) (per curiam) (unpublished) [" 'Importantly, although intermediate evidentiary burdens shift back and forth under this framework, [the plaintiff retains] the ultimate burden of persuading the trier of fact,' that her engagement in the protected activities was a 'but for' cause of her [adverse employment action]."(quoting Hoyle v. Freightliner, LLC, 650 F.3d 321, 336 (4th Cir.2011) (internal quotation marks and alterations omitted)) (citing Univ. of Tex. Sw.



Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013)).

## IV.

### Breach of Contract

Plaintiff's final claim is that G4S entered into a contract with her through the issuance of an employee handbook. See Complaint, ¶ 60. She also alleges that she signed numerous other documents when she entered into her employment with the Defendant which evidenced a contractual argument. See Complaint, ¶ 63. Plaintiff alleges that her termination by the Defendant breached her contract of employment. G4S argues in its motion for summary judgment, inter alia, that Plaintiff did not have an employment contract the Defendant and that Plaintiff has failed to provide evidence sufficient to meet the elements of a contract to take her position outside of an at-will employment relationship.

With respect to employment, there is a presumption in South Carolina that employees are at-will; see Prescott v. Farmer's Tel. Co-Op., Inc., 516 S.E.2d 923, 927, n. 8 (S.C. 1999)[In South Carolina, "there is a presumption of at-will employment']; cf. Perrine v. G4S Solutions (USA), Inc., No. 11-1210, 2011 WL 3563110, at * 2 (D.S.C. Aug. 9, 2011); Amason v. P. K. Management, LLC, No. 10-1752, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); and G4S argues that Plaintiff even acknowledged that her employment was at-will and that she could be terminated at any time for any reason when she entered into her employment. G4S notes that the Employment Agreement that Plaintiff signed at the outset of her employment with G4S specifically states that "I understand that [G4S] retains the absolute right to terminate employment of an employee, at any time, with or without good cause. See Plaintiff's Deposition Exhibit 4. Further, the handbook provided as an exhibit clearly sets forth in the introduction:

34



> This handbook is intended as a guide for the efficient and professional performance of your job. Nothing herein contained shall be construed to be a contract between the employer and the employee. Additionally, this handbook is not to be construed by any employee as containing binding terms and conditions of employment. The company retains the absolute right to terminate any employee, at any time, with or without cause. Management retains the right to change the contents of this handbook, as it deems necessary, with or without notice.

Plaintiff's Deposition Exhibit 19, p. 2.[16]

Plaintiff contends that the handbook lacks the required statutory language necessary to avoid a contract of employment. However, while the handbook does not contain a disclaimer "conspicuous" under S.C. Code Ann. § 41-1-110, (Supp. 2012), it is still necessary in order to maintain a breach of contract claim that the handbook contain mandatory language sufficient to alter the presumption in South Carolina of an at-will employee relationship. Cf. Grant v. Mount Vernon Mills, Inc, 634 S.E.2d 15, 20 (S.C.Ct.App. 2006); Westmoreland v. AB Beverage Co., Inc., No. 05-3475, 2007 WL 2749450 at * 13 (D.S.C. Sept. 20, 2007). While Plaintiff cites certain language in her Complaint from the Employee Handbook to try to establish a plausible claim that her at-will employment relationship was altered by any such language, she has not cited any language which deals with any mandatory, progressive discipline procedures. Complaint, ¶ 62; Grant, 634 S.E.2d at 147; Hessenthaler v. Tri-County Sister Help, Inc., 616 S.E.2d 694, 697-698 (S.C. 2005). Rather, the language in the handbook provides under the section dealing with Discipline that *"[t]he following are not binding terms and conditions of employment. The company retains the absolute right to terminate any employee at any time with or without cause."* See Plaintiff's Deposition Exhibit 19,

---

[16]This exhibit indicates that it is the 2011 version of the handbook. While it is not clear why the parties have provided this copy of the handbook to the Court, Plaintiff has not disputed that this language was contained in the handbook when she was hired. Plaintiff has even cited to this same 2011 version of the handbook as support for her breach of contract claim. See Plaintiff's Memorandum in Opposition, p. 13 & Exhibit M.



p. 33.

In order to survive the Defendants' motion for summary judgment with respect to her breach of contract claim, Plaintiff needs to have set forth sufficient factual evidence that she and G4S entered into mandatory and binding terms for her employment such as a definite term of employment, buyout provisions, right to severance pay, or other such indices of a contract of employment. <u>Cf</u>. <u>Wadford v. Hartford Fire Ins. Co.</u>, No. 87-2872, 1988 WL 492127 at *5 (D.S.C. 1988) ["A review of the relevant authorities... reveals that a policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status. Other terms and conditions of employment, including pay, benefits, job duties, or location of performance may be changed prospectively by either party without violating an employment contract with an indefinite term."]. The undersigned has both reviewed the handbook language cited by Plaintiff in her Complaint as well as undertaken an independent review of the employee handbook itself (provided to the Court as an exhibit), and does not find any language sufficient to establish a plausible claim that Plaintiff had a "contract" of employment by virtue of this handbook. <u>Cf</u>. <u>Small v. Springs Industries, Inc.</u>, 357 S.E.2d 452, 455 (S.C. 1987)[only policy drafted in sufficiently mandatory terms may serve to alter at-will employment status]; <u>Grant</u>, 634 S.E.2d at 21-22; <u>Storms v. Goodyear Tire & Rubber Co.</u>, 775 F.Supp. 862, 867 (D.S.C. 1991) [noting that language cited by the employee was "not couched in mandatory terms and [did] not contain language that specifically [limited] the employer's right to demote or terminate [the Plaintiff] without cause"]; <u>Horton v. Darby Electric Co., Inc.</u>, 599 S.E.2d 456, 460-461 (S.C. 2004) [Manual containing progressive disciplinary procedure did not alter employee's at-will status].

Therefore, Plaintiff's Fourth Cause of Action for Breach of Contract should be



dismissed. <u>Cf.</u> <u>Harper v. United States</u>, 423 F.Supp. 192, 196 (D.S.C. 1976)["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"].

### **Conclusion**

Based on the foregoing, it is recommended that Defendants' motion for summary judgment be **granted** as to all of Plaintiff's claims.

The parties are referred to the notice page attached hereto.

December 15, 2014
Charleston, South Carolina

_____
Bristow Marchant
United States Magistrate Judge



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

